. Hanau & Co. v. Louisiana Mutual Insurance Company.

Under a marine policy of insurance, there must be a technical total loss to entitle the assured to aban-
don the vessel, and when the insured have not the right to abandon, the captain cannot be con-
sidered as the agent of the insurers.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.
D. C. Labatt and T. J. Semmes, for plaintiffs. *Race & Foster* and L. Peirce,
for defendants and appellants.

Voorhies, J. The ship Columbia, the property of the plaintiffs, was insured
for the sum of $24,000, of which, seven thousand by the defendants.

She left Callao, bound for Cowes, on the 12th day of July, 1857, with a cargo
of guano, and returned to the former port in distress, having been at sea about
thirty hours.

The captain entered a protest; provoked surveys of the ship; had appraise-
ments made of repairs; attempted to borrow money for the purpose of making
these repairs; and, finally, had the property sold for the benefit of whom it might
concern. The ship was adjudicated at the sum of $8,800.

There is some conflicting evidence upon matters which affect the issue between
the parties; and we would not hesitate to adopt the conclusions of the jury, were
it not that questions of law and of fact are intimately blended in this cause—
that the jury have not given such a verdict, as to inform us of their views with
regard to the conflict of evidence—and that this is not a case peculiarly within
the province of juries. After a careful investigation of the facts and of the law
bearing upon them, our conclusion is, that the abandonment of the ship Colum-
bia cannot prejudice the defendants, because there was not a technical total loss.

When the Columbia left the Chincha Islands for the port of Callao, she was
heavily laden, and leaked on her way, although she did not encounter rough seas
or bad weather. The first mate, when in port, informed the captain of this cir-
cumstance; but to this the latter, as he states in his deposition, attached no im-
portance. However, he proceeded to examine the ship and had some repairs
made.

During the thirty hours on her way from, and back to the port of Callao, she
strained and leaked considerably. The captain, after consulting the other offi-
cers, had concluded that it was unsafe to prosecute the voyage. It is obvious
that these injuries were not occasioned exclusively by the stress of weather, of
which an account is given by the captain. There were a fresh gale and a chop-
ping sea, it is true; but, had the ship been laden less heavily, and been made
perfectly seaworthy before leaving Callao, she could have sailed with safety.

In this connection, it is proper to give an extract from a letter, written by
plaintiffs, in answer to one which they had received from the captain of the Co-
lumbia:

"From the mere fact of her springing a leak the first day out, it seems scarcely
possible that the repairs will reach the sum you name; but you may know of
damage that you do not mention. We beg you will be exceeding careful that the
protest is correctly extended, and the surveys are fully expressed. As in your
case the vessel was so short a time from port, we trust you will be able to show
by the protest, that there were winds and waves sufficient to cause the leak, and

26

HANAU
v.
LA MU. INS. CO.

all other damage—that it arose from no insufficiency of the ship, or overloading. You must be aware that the underwriters look with suspicion on all such losses," etc.

But it is not necessary to rest the case on the fact of unseaworthiness at the time of departure from the port of Callao ; for, admitting the defendants' liability for the injuries received by the ship, the question occurs, whether there was a technical total loss, justifying the abandonment, and thereby fixing the liability of the insurance companies ?

The different estimates made by the witnesses, are widely at variance. According to some, it required about $28,000 ; and others testify, that for less than $3,500, the ship could be substantially repaired. The opinion of these witnesses might be, to a certain extent, reconciled, if their respective estimates were made with reference to difference of opinion as to the repairs that could legally be required of the insurance company. Those who adopt the higher estimate, seemed to conceive that the ship was to be repaired thoroughly, so as to make her abundantly strong and staunch, without reference to her age and previous condition.

If we take as a test of the injuries sustained, the enormous repairs required by the captain, the plaintiffs are met by the following objection : Considering that the ship had, after her departure from Callao, met with but ordinary bad weather, she must have been unseaworthy at the time of departure ! Otherwise, the estimate of $28,000, however correct with reference to the repairs specified in the survey, was unfounded, if the ship was only to be reinstated to her previous condition, before she had been injured, within the terms of the policy of insurance !

We cannot adopt the high estimate of repairs, because the result justified the lower appraisement. The Columbia was sold to *Francisco Roman,* a naval officer of the Peruvian government, and, after being repaired for the sum of one hundred and ninety dollars, took a cargo of guano for Valencia, and safely made the voyage. This, of itself, would not prove that she was seaworthy ; but it is entitled to great weight, from the other concomitant circumstances—that its cargo of guano, a very valuable merchandise, was shipped on board of her without insurance, and that witnesses testify to her seaworthiness, after she had received these slight repairs.

We have no hesitation in saying, that for a comparatively small amount, the Columbia could have been repaired and made seaworthy, within the meaning of the policy of insurance ; and, consequently, that there was not a technical total loss. The duty of the captain was to have the necessary repairs made ; and, although it was impossible for him to effect a loan on bottomry for the sum of $28,000, as advertised by him, it does not appear but that he might easily have procured the necessary funds.

The abandonment and sale of the ship, cannot prejudice the defendants. Against these they have protested from the moment they were notified of the loss. It is true, that " if the insurers, after the notice of abandonment, suffer the captain to continue in the management, he becomes their agent, and they are bound by his acts" (Marshal on Ins. p. 527) ; but, when the insured have not the right to abandon, the captain cannot be considered, in any event, as the agent of the insurers.

It is, therefore, ordered and decreed, that the judgment of the District Court, on the verdict of the jury, be avoided and reversed ; and that the defendants do have judgment against the plaintiffs, with costs in both courts.

LAND, J., took no part in this case.